Elisa M. ACOT, Plaintiff,

v.

NEW YORK MEDICAL COLLEGE affiliated with Lincoln Hospital, Defendant.

No. 89 Civ. 7620 (LMM).

United States District Court, S.D. New York.

Dec. 27, 1993.

Order Denying Reargument Feb. 24, 1994.

Carl Kuntz, New York City, for plaintiff.

Barbara Hoey, Kelley Drye, New York City, for defendant.

## MEMORANDUM AND ORDER

McKENNA, District Judge.

Plaintiff Elisa M. Acot filed this action on January 7, 1993, invoking the jurisdiction of this Court pursuant to 28 U.S.C. § 1331. Plaintiff seeks relief from Defendant, Lincoln Hospital of the New York City Health and Hospitals Corporation ("Hospital"), on the grounds that she was discriminated against and improperly and unlawfully terminated based on her national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Defendant moved originally for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, or, in the alternative, for dismissal of Plaintiff's claim, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, on the ground that Plaintiff failed to prosecute this action. Defendant subse-

quently asked that its Rule 12(c) motion be converted to and disposed of as a motion for summary judgment, *see* Fed.R.Civ.P. 56, on the ground that Plaintiff, in responding to Defendant's 12(c) motion, annexed materials outside the pleadings.[1] Plaintiff cross-moves this Court, pursuant to Rules 6(b) and 4(j) of the Federal Rules of Civil Procedure, to extend the time for Plaintiff to serve the Summons and Complaint on New York Medical College ("College").

For the reasons stated below, Defendant's motions are denied, and Plaintiff's cross-motion is granted.

## I.

Construed in the light most favorable to Plaintiff, the facts are as follows. Plaintiff, an individual of Philippine national origin, worked as a microbiologist at Lincoln Hospital from 1968 to 1987. From 1968 to 1979, Plaintiff worked at Lincoln Hospital pursuant to an affiliation agreement between Hospital and Albert Einstein Medical College; from 1979 to 1987, Plaintiff worked at Lincoln Hospital pursuant to an affiliation agreement between Hospital and New York Medical College ("Affiliation Agreement").[2] In or about 1982, Dr. Yvonne Lue became the Director of the Microbiology Laboratory; in 1984, Trevor McLean became the Supervisor of the Microbiology Laboratory. On certain occasions when both Lue and McLean were absent, Linton Beckels, an employee of Hospital, supervised Plaintiff. Both Lue and McLean, who are of Jamaican national origin, as well as other co-workers of Jamaican, Black, African, or Hispanic national origin, began to harass Plaintiff. Plaintiff contends that McLean, with the tacit approval of Lue, orchestrated a campaign of disparate treatment of Plaintiff, allegedly carried out both by Plaintiff's superiors and her co-workers, which culminated in Plaintiff's termination,

purportedly for an infraction of Hospital's rules.[3]

Plaintiff began her pursuit of redress in 1987, when she filed complaints before both the New York State Division of Human Rights ("HDR") and the Equal Employment Opportunity Commission ("EEOC"). Following her receipt of a "right to sue" letter issued by the EEOC on August 22, 1989, Plaintiff commenced this action *pro se* on November 3, 1989, in the United State District Court. Based on her understanding that although she worked at Lincoln Hospital she was on the payroll of College, Plaintiff identified the Defendant in her Complaint as "New York Medical College affiliated with Lincoln Hospital."

After filing the complaint and obtaining issuance of the summons, Plaintiff retained, and forwarded the summons and complaint to, a process-serving agency she found in the telephone directory. The agency proceeded to College's offices located on Hospital's premises and was directed by Hospital personnel to serve the summons at the office of the New York City Health and Hospitals Corporation at 125 Worth Street. Shortly thereafter, the agency provided Plaintiff with an affidavit of service indicating that the entity served on December 14, 1989, was "New York Medical College." Acot subsequently received a letter from counsel for the New York City Health and Hospitals Corporation ("HHC") indicating that the summons had in fact been served on HHC, and suggesting that College, therefore, had not been served properly. Believing that she may have served the wrong party, Plaintiff, on March 6, 1990, made an application to Judge Duffy for additional time to serve the summons on College. Judge Duffy granted the application on March 19, 1990, giving Plain-

1. Hospital also, belatedly, asked this Court to dismiss the action on the ground that Plaintiff failed to join an indispensable party, namely, New York Medical College. *See* Def.'s Reply Mem. of Law Supp.Mot. to Dismiss, at 16–18. This motion will not be addressed separately, but will instead be disposed of in the course of deciding Plaintiff's Cross–Motion for an extension of time for Plaintiff to serve the Summons and Complaint on New York Medical College.

2. Whether or not the Affiliation Agreement or the supervision and control over Plaintiff allegedly exercised by Hospital make Hospital an employer of Plaintiff pursuant to 42 U.S.C. § 2000e(b) is a disputed issue.

3. It is unnecessary at this juncture to detail the conduct to which Plaintiff contends she was subjected. For the purpose of deciding the instant motions, it is sufficient to note that Plaintiff alleges harassment, discriminatory treatment, and unlawful termination based on her national origin.

tiff until July 15, 1990, to serve the summons on College.

In late March 1990, Plaintiff received notice that the HDR had issued a determination that there was probable cause to believe a violation of the law had occurred, and that a public hearing would be scheduled at a date in the future. Believing that her federal action had to await the outcome of the state proceedings, Plaintiff, prior to the July 15, 1990, deadline imposed by Judge Duffy, prepared a motion requesting that the Court grant an indefinite extension of time until the HDR proceeding was completed. Although Plaintiff asserts that she mailed a copy of the motion to the Court, there is no entry for the motion on the docket sheet and the motion does not appear in the case file. Plaintiff, however, served a copy of this motion on College, at its main office in Valhalla, New York, by certified mail, return receipt requested; Plaintiff received a return receipt card signed for by College acknowledging service.

## II.

■ "[D]ismissal of an action with prejudice is a drastic remedy which should be applied only in extreme circumstances." *Ali A. Tamini v. M/V JEWON*, 808 F.2d 978, 980 (2d Cir.1987) (citations omitted); *accord Alvarez v. Simmons Mkt. Research Bureau, Inc.*, 839 F.2d 930, 932 (2d Cir.1988). Dismissal for failure to prosecute an action is reserved to the discretion of the court by Rule 41(b), which states:

> *(b) Involuntary Dismissal: Effect Thereof.* For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision … operates as an adjudication upon the merits.

Fed.R.Civ.P. 41(b). The primary rationale for a Rule 41(b) dismissal is a plaintiff's failure to diligently proceed with an action. *See Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir.1982). No single factor,

however, has talismanic significance in determining whether a plaintiff has failed to discharge the duty of diligence. Thus, a delay of a particular duration will not, alone, be determinative. Moreover, although "[p]rejudice to defendants resulting from unreasonable delay may be presumed, [ ] in cases where delay is more moderate or excusable, the need to show actual prejudice is proportionally greater." *Id.* at 43 (citations omitted). Indeed, even "the failure of a defendant to call the court's attention to a plaintiff's undue delay in bringing a case on for trial, by formal motion or otherwise, may be considered as a factor in informing the court's discretion." *Finley v. Parvin/Dohrmann Co.*, 520 F.2d 386, 392 (2d Cir.1975).

■ Plaintiff's action should not be dismissed for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. The cases cited by Defendant in which dismissals were granted for periods of inactivity shorter than exists in the instant case are not, in themselves, helpful. A number of other cases cited by Defendant are likewise inapposite, because in the instant case Plaintiff has neither manifested a lack of interest in pursuing the action—witness her pursuit of state proceedings arising out of the same alleged underlying conduct—nor defied court orders. *Pro se* applicants, moreover, are traditionally accorded special solicitude in proceeding with their claims. *See, e.g., McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir.1988). Finally, Defendant's failure either to show that it has been prejudiced by Plaintiff's inactivity or to call the delay to the Court's attention until now works against Defendant.[4]

## III.

■ Defendant's request to convert its motion for judgment on the pleadings to a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is granted. Rule 12(c) provides that:

> After the pleadings are closed but within such time as not to delay the trial, any

---

4. Defendant's argument that Plaintiff has failed to pursue discovery is also unpersuasive, because, as the Second Circuit has noted, resting a dismissal for failure to prosecute, even in part,

on the fact that a plaintiff has failed to pursue discovery smacks of transforming a right into a duty. *See Finley v. Parvin/Dohrmann Co.*, 520 F.2d 386, 391 (2d Cir.1975).

party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(c). In deciding on a Rule 12(c) motion, "consideration is limited to the factual allegations in [the] amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit [*sic*] or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[ ] had knowledge and relied on in bringing suit." *Brass v. American Film Technologies, Inc.*, 987 F.2d 142 (2d Cir.1993); *accord Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991), *cert. denied* —— U.S. ——, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992). Defendant asserts, and Plaintiff does not dispute, that Plaintiff has annexed materials outside the pleadings and the aforementioned categories. Therefore, Defendant's motion for judgment on the pleadings is converted to and will be disposed of as a motion for summary judgment.

■ "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) (citations omitted). Indeed, the Federal Rules of Civil Procedure provide that summary judgment "*shall* be rendered forthwith if ... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (emphasis added). While "courts have a responsibility to vigilantly

weed out those cases that do not merit further judicial attention," they are likewise cautioned that "this potent instrument must be used with the precision of a scalpel." *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 55 (2d Cir.1987). The moving party bears the initial responsibility for "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552 (quoting Fed.R.Civ.P. 56(c)). Once the moving party has discharged this duty, the burden shifts to the non-moving party to demonstrate the existence of a genuine issue of material fact. The non-moving party may not, however, simply either rest upon the allegations or denials contained in its pleading, *see* Fed.R.Civ.P. 56(e), or "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Rather, the non-moving party must "present affirmative evidence.... from which a jury might return a verdict in [its] favor." *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514.

■ At the heart of Defendant's motion for summary judgment is the contention that Defendant was not an employer of Plaintiff within the definition found in 42 U.S.C. § 2000e(b). Defendant acknowledges that in certain exceptional instances the absence of a direct employment relationship does not bar a Title VII claim. Nevertheless, Defendant asserts that no such exception is warranted in the instant case, and that, therefore, the absence of a direct employment relationship between Hospital and Plaintiff bars a Title VII claim. Defendant's argument, at bottom, is that the terms of the Affiliation Agreement, particularly §§ 16.01 and 16.03,[5] demonstrate that Hospital was not Plaintiff's em-

---

**5.** Section 16.01 of the Affiliation Agreement states:

> The employees, faculty, and students of the Affiliate [College] who perform services under this Agreement are neither employees of the Corporation, the Hospital, or the City....

Def.'s Decl.Supp.Mot. to Dismiss Exh. 1, § 16.01, at 54. Section 16.03 of the Affiliation Agreement states, in pertinent part:

> The Affiliate [College] agrees that neither it nor its employees, agents, or students will hold themselves out as, nor claim to be, officers or employees of the Corporation or the City of

ployer.[6]  Plaintiff answers that other provisions of the Affiliation Agreement,[7] read in light of a joint employer liability theory,[8] demonstrate that Hospital exerted sufficient control over the terms of Plaintiff's employment to qualify as an employer under 42 U.S.C. § 2000e(b).

Because a genuine issue of material fact exists as to whether Hospital may be considered an employer of Plaintiff pursuant to 42 U.S.C. § 2000e(b), summary judgment is inappropriate at this time.  Both Plaintiff and Defendant cite a number of cases in pressing their respective arguments, and, in turn, attempt to distinguish the cases cited by the other.  A thorough analysis of each party's reasoning, however, is unnecessary at this juncture.  The Affiliation Agreement read in light of a joint employer liability theory, together with the fact that Plaintiff was supervised by a Hospital employee on those occasions when both of her two immediate supervisors were absent, are sufficient "affirmative evidence. . . . from which a jury might return a verdict in [Plaintiff's] favor."  *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514.  Nor is this Court convinced that "the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief."  *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

> New York, or of any department, agency or unit thereof
> . . . .

*Id.* § 16.03, at 54.

**6.**  Defendant also relies on the application of the three-prong test promulgated in a recently decided case in the Western District of New York, *People of the State of New York v. Holiday Inns, Inc.*, No. 83–CV–564S, 1993 WL 30933 (W.D.N.Y. Jan. 28, 1993).  This case, however, is inapposite.  The *Holiday Inns* court addressed the issue of when a third party may be held liable under Title VII on the theory that the third party has exercised sufficient control to influence or interfere with an employee's employment opportunities.  The first prong of the articulated test is whether the third party is an employer as defined in 42 U.S.C. § 2000e(b).  *See id.* at *7.  However, it is this precise issue—whether Hospital is an employer under 42 U.S.C. § 2000e(b)—that is the core of the dispute in the instant action. Defendant's motion for summary judgment is not advanced by *Holiday Inns*, particularly given that the *Holiday Inns* court specifically stated:

> The "control" necessary under an interference theory is not to be confused with, nor is it the same as, the "right to control" which is neces-

## IV.

Plaintiff's cross-motion for an extension of time in which to serve the summons and complaint on College should be granted.  Rule 4(j) of the Federal Rules of Civil Procedure delimits the time for service of a summons and complaint in a federal action, and provides that failure to comply will result in dismissal absent a showing of good cause for noncompliance.  The time to comply established in Rule 4(j) may be extended pursuant to Rule 6(b), which is a general enlargement provision that gives a court discretion, upon a motion, to extend a deadline missed as a result of excusable neglect.  *See Williams v. Allen*, 616 F.Supp. 653, 656 (E.D.N.Y.1985); *see also* 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* Civil 2d § 1137, at 392 (2d ed. 1987).  The following factors, taken together, convince this Court that Plaintiff's cross-motion should be granted: (1) Plaintiff filed a motion to extend the deadline for service to July 15, 1990;  (2) Plaintiff attempted to extend that deadline indefinitely upon initiating a parallel state action;  (3) Plaintiff pursued a remedy in a state proceeding;  (4) Plaintiff originally proceeded *pro se* in this matter;  (5) Plaintiff's motion has not been directly contested.[9]

> sary to find an employer/employee relationship.

*See id.* at *6.

**7.**  In particular, Plaintiff refers to §§ 1.011, 1.012, and 2.031(b) of the Affiliation Agreement, which, in substance, provide that the HHC shall have responsibility for the administration and operation of the Hospital.

**8.**  Plaintiff advances the joint employer theory in conjunction with a number of cases that recognize that an entity which is not an employer in conventional terms may nevertheless, because of the control it exerts over the terms of employment, be considered an employer for purposes of a Title VII claim.  Defendant concedes that the Title VII definition of "employer" has some "play" built into it in this regard.  *See* Def.'s Reply Mem. of Law Supp.Mot. to Dismiss or J. on Pldgs. or Summ.J. at 9–10.

**9.**  Although Defendant did not directly contest Plaintiff's motion, Defendant did move for dismissal of Plaintiff's action on the ground that Plaintiff had failed to join an indispensable party—College.  In support of this motion, Defen-

**V.**

For the reasons set forth above, Defendant's motions are denied, and Plaintiff's cross-motion for additional time to serve the summons and complaint on College is granted with the understanding that Plaintiff must serve College on or before March 1, 1994.

SO ORDERED.

## MEMORANDUM AND ORDER ON REARGUMENT

Defendant New York Medical College ("College") filed this motion to dismiss the instant action against College, pursuant to Rules 4(j) and 12(b)(1) of the Federal Rules of Civil Procedure, on the ground that Plaintiff Elisa M. Acot failed to effect service on College within the time period prescribed by Rule 4(j). Because this Court considered and ruled on the issue of Plaintiff's time to serve the summons and complaint on College in a Memorandum and Order issued December 27, 1993, the instant motion is treated as a motion for reargument of that Order, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.[1] In that Memorandum and Order, this Court concluded:

> The following factors, taken together, convince this Court that Plaintiff's cross-motion [for an extension of time in which to serve the summons and complaint on College] should be granted: (1) Plaintiff filed a motion to extend the deadline for service to July 15, 1990; (2) Plaintiff attempted to extend that deadline indefinitely upon initiating a parallel state action; (3) Plaintiff pursued a remedy in a state proceeding; (4) Plaintiff originally proceeded *pro se* in this matter; (5) Plaintiff's motion has not been directly contested.

Memorandum and Order, Dec. 27, 1993, at 522 (footnote omitted).

**I.**

Aside from the obvious fact that College now contests the extension of time, College advances two arguments that speak to the enumerated factors upon which this Court's earlier decision was based. First, College offers three documents that date back to 1990 and 1991 that are addressed to or contain references to Robert Cantor, who is currently Plaintiff's co-counsel: (1) a January 30, 1990, response by College to a New York State Division of Human Rights ("NYSDHR") Document and Information Request, which indicates that a copy of the document was sent to "Robert Cantor, Esq.," Def.'s Notice of Mot. Ex. C; (2) a copy of a letter on College letterhead, dated April 26, 1991, with a salutation directed to a "Ms. Garland" that includes the words "Mr. Cantor" near the top of the first page as well as references to Cantor (as complainant's attorney) in the text, Def.'s Notice of Mot. Ex. D at 1 & ¶¶ 5, 7; and (3) a letter from NYSDHR, dated July 16, 1991, addressed to, among others, Cantor, who is listed as "Attorney for Complainant" (the Complainant being Acot). Def.'s Notice of Mot. Ex. E. Second, Defendant introduces a copy of the "probable cause" letter issued to Plaintiff by NYSDHR, noting that it was issued in March 1991 and not, as Plaintiff previously claimed, in March 1990.

**II.**

The decision to grant or deny a motion for reargument is within the sound discretion of the District Court. *See McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir. 1983). Given the strong interest in the finality of judgments, such a motion should be granted "only where the Court has overlooked matters or controlling decisions which might have materially influenced the earlier decision." *Park South Tenants Corp. v. 200 Central Park South Assocs., L.P.,* 754

dant argued that joinder is no longer feasible because, *inter alia,* the statute of limitations had run on possible claims against College. The Court will afford Plaintiff the opportunity to remedy what Defendant has pointed to as a defect in her action, and, without passing on Defendant's contentions, will leave it to College to assert its own defenses.

1. Given the fact that this motion is brought by a party to the action that was not involved in the previous motion to dismiss, the usual time limit for noticing a motion for reargument, delineated in United States District Courts for the Southern and Eastern Districts of New York Joint Rules, for Civil Proceedings Rule 3(j), is waived.

F.Supp. 352, 354 (S.D.N.Y.), *aff'd*, 941 F.2d 112 (2d Cir.1991) (citations omitted); *see also United States v. Swift & Co.*, 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932) (Cardozo, J.). Faced with such a motion, a court must determine whether any manifest errors were made and, if so, consider the original decision in light of the concerns raised by the moving party.

### III.

College fails to persuade this Court that it committed a manifest error by granting Plaintiff's motion to extend her time to serve the summons and complaint on College. First, College claims, in effect, that the aforementioned documents undermine the special consideration shown Plaintiff because she was proceeding *pro se* during the period from the incidents at issue in the underlying action until May 1993. This Court disagrees. The first document indicates only that Cantor is an attorney. In the second document, a block of space on the first page from immediately below "Mr. Cantor" to immediately above the salutation has been blocked out, apparently by placing a blank piece of paper over this portion of the document and recopying it; the altered state of the second document renders it suspect. In any case, the references, in both the second and the third document to the fact that Cantor was Acot's attorney in the NYSDHR proceeding (accepting, *arguendo*, that this is accurate) is not persuasive because they do not demonstrate that Acot was represented by counsel in *this* action prior to May 1993. Second, as to the date of the "probable cause" letter, this Court assumes, without deciding, that College is correct as to the meaning of this discrepancy: that Plaintiff's delay cannot be attributed to parallel pending probable cause determination. Even so, this Court concludes that it was not manifest error to grant Plaintiff the aforementioned extension in light of only the first, third, and fourth factors, noted *supra*, and, moreover, that knowledge of the matters brought to the Court's attention by College would not have materially influenced the Court's earlier decision.

### IV.

For the foregoing reasons, Defendant's motion for reargument of this Court's December 27, 1993, Order is denied.

SO ORDERED.